IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (at Columbus)

FILED
RICHARD W. NAGEL
CLERK OF COURT

2022 JUN -7 AM 10: 54

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., KEITH D. WILKEY, M.C., | : : : | CASE NO. _____ |
| **Plaintiff,** | : : : : : | JUDGE WATSON |
|  |  | Judge _____ |
|  |  | MAGISTRATE JUDGE VASCURA |
| **UNITEDHEALTH GROUP** | : : : : | COMPLAINT FOR VIOLATION THE FEDERAL FALSE CLAIMS ACT (31 U.S.C. §3729, et seq.) AND OTHER APPLICABLE LAW WITH JURY |
| **SERVE:** (Via Certified Mail) | : : : | TRIAL ENDORSED HEREON (FILED |
|  | : : | EN CAMERA AND UNDER SEAL) |
| **ORTHOPEDIC & NEUROLOGICAL CONSULTANTS, INC.** | : : : | |
| **SERVE** (Via Certified Mail) | : : : : | |
| **MARK WHITE, D.O,** | : : | |
| **SERVE** (Via Certified Mail) | : : : : | |
| **Respondents.** | : | |

Plaintiff/Relator, Keith D. Wilkey, M.D., brings this *qui tam* action in the name of the

United States of America, by and through undersigned counsel Glenn Feagan, against

UnitedHealthCare ("UHC"), the health benefit business of UnitedHealth Group, Orthopedics

2

Consultants, Inc. ("OrthoNeuro") and Mark White, D.O. ("Dr. White") (each a "Respondent" and collectively "Respondents"), and alleges as follows.

## I.   SUMMARY INTRODUCTION

1. This is an action by Relator on behalf of the United States of America against Respondents to recover penalties and damages arising from false statements, false claims, billing fraud, conspiracy to defraud, unnecessary treatment, and fraudulent acts and omissions made in support of false Medicaid claims, false Medicare claims, false federal income tax deductions and write-offs, and fraudulently induced payments made to the government [the "false claims"] which were knowingly caused by Respondents and submitted to the government to get the false claims paid by the government.

2. The proceeds of the false claims were paid to Respondents by the United States government as a result of Respondents' fraud and deceit in the documentation, diagnosis, treatment and follow up of spinal cord disorders or injuries.

## II.   PARTIES

3. Relator is Keith D. Wilkey, MD is an orthopedic spine surgeon currently employed by UnitedHealthCare ("UHC") as medical director performing utilization management for UHC's Neurosurgery, spine and orthopedic service lines.

4. Respondent UnitedHealth Group, is a for profit corporation organized under the laws of Delaware and operating in Ohio. UHC is the health benefits business of UnitedHealth Group.

5. The agents for service of process of UHC is CT Corporation System, 4400 Easton Way, Suite 125, Columbus, Ohio 43219 and United Healthcare Services, Inc., UnitedHealth Group Center, 9900 Bren Road East, Minnetonka, MN 55343.

6. Defendant Orthopedic & Neurological Consultants, Inc. ("OrthoNeuro") is a for profit corporation organized under the laws of the State of Ohio with locations in and around Columbus, Ohio.

7. OrthoNeuro's principal place of business is located at 70 S. Cleveland Street, Westerville, Ohio 43081.

8. The agent for service of process for OrthoNeuro is Mercury Agent Company, 250 West Street, Suite 700, Columbus, Ohio 43215.

9. Defendant Mark White, D.O. ("Dr. White") is a board-certified neurosurgeon specializing in adult spine disorders. He joined OrthoNeuro in May 2020.

10. Dr. White completed his undergraduate training at the University of Texas at Austin, his medical school training at the University of North Texas Health Science Center and his neurosurgical residency training at Doctors Hospital in Columbus, Ohio. He completed his spine fellowship at the University of Arizona Health System in Tucson Arizona.

11. Dr. White holds privileges at Mt. Carmel Saint Ann's, Mt. Carmel New Albany, Mt. Carmel East, Dublin Methodist, and Grant Medical Center.

12. Dr. White has an address at 70 S. Cleveland Ave., Westerville, OH 43081.

## III.    JURISDICTION & VENUE

13. This action arises under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* and other applicable law.

14. This Court maintains subject matter jurisdiction over this action pursuant 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

15. This Court has personal jurisdiction over UHC, OrthoNeuro and Dr. White (each a "Respondent" and collectively "Respondents") in this action because each is amenable to this

4

Court's nationwide service of process at 31 U.S.C. §3732(a) and other applicable law. Additionally, UHC has a place of business located in Franklin County, Ohio and it transacts business in Ohio. OrthoNeuro's principal place of business is located at 70 S. Cleveland Avenue, Westerville, OH 43081. Dr. White resides in Westerville, Ohio and conducts business in 70 S. Cleveland Avenue, Westerville, OH 43081.

16. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because: each (i) Respondent transacted business in this District and did so at all times relevant hereto, and, as averred below, (ii) each Respondent committed acts proscribed by 28 U.S.C. § 3729 in this District that give rise to this action.

17. Before filing this complaint, Relator served a copy of same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

18. Relator has complied with all other conditions precedent to bringing this action.

19. Relator is the original sources of, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government before filing this action.

## IV.  BACKGROUND

### 1.  QUI TAM AND RESPONDENTS' VIOLATIONS OF THE FALSE CLAIMS ACT.

20. Relator incorporates, adopts, and re-alleges as if fully restated herein the allegations contained in the above paragraphs.

21. As described in this Complaint, Respondents, individually and/or by and through their officers, agents, and employees, violated the False Claims Act, 31 U.S.C. §§3729, *et seq.,* when they: (a) submitted and/or caused to be submitted false claims of services for payment;(b) submitted

fraudulent and improper billing and payment coding corresponding to specific services that are unreasonable or not medically necessary; (d) falsified medical reports and patient assessments; (e) performed unreasonable and medically unnecessary procedures and treatment and therapies, risking and causing patient harm; and (f) pursued a fraudulent course of conduct, using methods of avoiding detection, to obtain improper and unlawful government reimbursement, which is not paid back or refunded.

22. Respondents violated and continue to violate the FCA through such fraud, all in efforts to maximize Medicare reimbursement for the company's personal, financial benefit. UHC and OrthoNeuro are aware of, encourage, facilitate, require, actively pressure, and financially benefit from the fraud, at the expense of the U.S. Treasury and while jeopardizing patient health, welfare, and safety.

23. "Knowingly" is defined in the False Claims Act as (1) actual knowledge, (2) deliberate ignorance of the truth or falsity of the information, or (3) reckless disregard of the truth or falsity of the information.

24. As described in this Complaint, and in the alternative, Respondents, by and through their its officers, agents, and employees conspired to commit, and/or committed violation(s) of the False Claims Act, and other improper acts and omissions, as alleged in this Complaint.

25. Respondents alone, or in conjunction with one another, authorized and/or ratified the violations of the False Claims Act committed by their various officers, agents, and employees.

26. Respondents knowingly made false billing claims, falsified medical treatment, made false statements of material fact, falsified medical records, submitted false medical billing records, in order to obtain payment from Medicare or Medicaid and/or obtain other improper consideration and payments from the United States.

**2. MEDICARE/MEDICAID**

6

27. Medicare is a federal health insurance system for individuals 65 years of age and older and for people with certain disabilities under the age of 65. Similarly, Medicaid is a federal health insurance system for eligible low-income individuals and families. At all relevant times hereto, the United States administered Medicare and Medicaid through the HHS's agency, the CMS.

28. Healthcare providers who participate in the Medicare and/or Medicaid program must enter into a contract with CMS, whereby the provider agrees to conform to all applicable statutory and regulatory provisions relating to Medicare/Medicaid payments and reimbursements. *See* 42 U.S.C. § 1395cc.

29. Moreover, such providers are prohibited from making false statements or misrepresentations of material facts concerning the payment of claims or reimbursements, billing for services or products that were not performed according to applicable policies, and engaging in illegal activities. *See* 42 U.S.C. § 1395, *et seq.*

30. Title XVIII of the Social Security Act section 1862 (a)(1)(A) allows coverage and payment of those services that are considered to be medically reasonable and necessary.

31. It is critical to the continued solvency and integrity of the Medicare and Medicaid systems that healthcare providers and institutions bill only for services that are actually necessary and performed within the established requirements.

32. At all relevant times herein, Respondents were participating Medicare and Medicaid providers, and therefore was required to obey all federal and state laws and regulations governing such provider, including the FCA, 31 U.S.C. § 3279, *et seq.*

**3. UTILIZATION MANAGEMENT IN HEALTH CARE**

33. In the not so distant past, medical decisions were the exclusive province of a doctor and her patient. Now, these decisions more often than not have to be examined in advance by an external reviewer, someone who is accountable to an employer, insurer, health maintenance organization ("HMO"), preferred provider organization ("PPO"), or other entity responsible for paying all or most of the cost of the care.

34. Depending upon the circumstances, this outside party may be involved in discussions about whether a service is needed, how treatment will be provided, and where care will occur.

35. Utilization management ("UM") is a process that evaluates the efficiency, appropriateness, and medical necessity of the treatments, services, procedures, and facilities provided to patients on a case-by-case basis. This process is run by — or on behalf of — purchasers of medical services (i.e., insurance providers) rather than by doctors.

36. Relator is that external reviewer, someone who is accountable to UHC.

## VI.     ALLEGATIONS

37. Relator is a citizen of the United States and a citizen of the State of Ohio.

38. Relator brings this action based on his direct, independent and personal knowledge and is the original source of information to the United States and has voluntarily provided this information to the United States prior to the filing of this action.

39. Relator has been a board-certified orthopedic surgeon since 1998. He is licensed to practice medicine in Kentucky, Illinois and Missouri. He completed his internship and orthopedic residency as an Army physician at Brooke Army Medical Center, San Antonio, TX.

40. From 1996 to 1998, Relator was the Chief of Outpatient Specialty Clinics/Orthopedics at Ft. Drum, NY.

41. From 1999 to 2001 he was an associate professor of surgery at the University of Illinois at Urban Champagne. From 2001 to 2004 he was an orthopedic and spine surgeon at Miami University of Ohio in Hamilton, Ohio.

42. In 2005, he completed a Spine Fellowship at Leatherman Spine Institute. From 2005 until September 2020 he worked as a board certified orthopedic spine surgeon in various locations, most recently in Olean, NY, at the Olean General Hospital, and the Bradford Regional Medical Center in Bradford, PA.

43. He is currently employed as a medical director performing utilization management for the neurosurgery, spine and orthopedic service lines for UHC.

44. The United States is the real plaintiff-in-interest with respect to the claims asserted herein. The United States, acting through the Department of Health and Human Services ("HHS") and its Centers for Medicare and Medicaid Services ("CMS"), administers the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* ("Medicare"), and Grants to States for Medical Assistance Programs pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* ("Medicaid").

45. During his routine duties at UHC, Relator was assigned to evaluate surgery requests on behalf of patients of Dr. White.

46. After careful review of these requests, Relator came to the determination that Dr. White had misrepresented radiographies and advanced imaging studies, including magnetic resonance imaging ("MRI") studies in order to give his patients diagnoses that they did not have in order to meet the minimum criteria for fusion surgery.

9

47. Specifically, on these occasions, Relator determined that Dr. White would misrepresent the diagnosis of Degenerative Disc Disease as Spondylolisthesis.

48. Degenerative Disc Disease occurs when your spinal disks wear down. Spinal disks are rubbery cushions between your vertebrae (bones in your spinal column). They act as shock absorbers and help you move, bend and twist comfortably. Everyone's spinal disks degenerate over time and is a normal part of aging.

49. When the cushions wear away, the bones can start to rub together. This contact can cause pain and other problems

50. Spondylolisthesis is a different condition involving spine instability. In Spondylolisthesis, the spinal vertebrae move more than they should. A vertebra slips out of place onto the vertebra below. It may put pressure on a nerve, which causes lower back pain or leg pain. It is a more serious condition that degenerative disc disease.

51. While Degenerative Disc Disease is usually treated by performing a discectomy or microdiscectomy and is seldom treated by surgical fusion. Patients with Spondylolisthesis, however, are often be treated with a more expensive surgical fusion.

52. A discectomy or microdiscectomy costs in the range of $20,000 to $50,000. A fusion is much more expensive, ranging from $80,000 to $150,000.

53. After Relator made an adverse determination for one of Dr. White's request to approve surgical fusion for one of his patients who suffered from Degenerative Disc Disease, Dr. White requested a peer to peer conference with Relator to discuss Relator's determination.

54. During the conversation, Dr. White twice threatened to unnecessarily mistreat the patient in question if Relator did not approve of Dr. White's request for more aggressive and more expensive surgical treatment.

10

55. In practice, what Dr. White's threats mean is that during the initial lesser surgery which could be approved, Dr. White would unnecessarily resect a large amount of bone making the patient's spine unstable. This would require another surgery to correct the problem that Dr. White intentionally caused.

56. Dr. White stated that it would be cheaper for UHC to approve from the start the surgical fusion he proposed. Relator made no further comment after Dr. White made these threats to his patient and insisted on the surgical fusion surgery being approved.

57. Dr. White made those remarks even after he was warned that the phone conversation was recorded.

58. Relator's duty at UHC required that he report this encounter along with his determination of misrepresentation of diagnoses to UHC's Fraud, Waste and Abuse Committee.

59. Accordingly, in January 2022, Relator reported his interaction with Dr. White to UHC's UHC's Fraud, Waste and Abuse Committee.

60. Said committee listened to the recording and agreed that Dr. White threatened to mistreat his patient unless Relator approved the more aggressive surgery.

61. However, on February 22, 2022, UHC's Fraud, Waste and Abuse Committee declined to intervene or even to issue a warning to Dr. White that his threats were inappropriate.

62. Rather than taking actions against Dr. White, UHC took actions against Relator. UHC sent Relator to training to learn how to de-escalate the type of interactions that Relator had with Dr. White. As stated above, there never was any escalation.

63. While Relator performs evaluation management only for those patients of Dr. White with private health insurance coverage, the so called "commercial patients," Dr. White also treats Medicare and Medicaid patients.

64. UHC also provides coverage to Medicare and Medicaid patients.

65. In addition, Dr. White holds privileges at Mt. Carmel Saint Ann's, Mt. Carmel New Albany, Mt. Carmel East, Dublin Methodist, and Grant Medical Center, Dr. White's fraud and misconduct is likely to extend to these hospitals.

66. Based on Respondents' course of conduct observed by Relator, it is more than likely that Respondents act in the same fraudulent manner with respect to all of Dr. White's patients, in particular those covered by Medicaid and Medicare.

67. Respondents when they approved or caused to be approved medical procedures that are not necessary nor reasonable submitted and/or caused to be submitted false claims of services for payment to the United States government

68. In order to obtain payment for the false claims related to unreasonable and/or unnecessary medical procedures, Respondents submitted fraudulent and improper billing and payment coding corresponding to specific services that are unreasonable or not medically necessary.

69. In order to obtain payment for the false claims related to unreasonable and/or unnecessary medical procedures, Respondents falsified or caused to be falsified medical reports and patient assessments.

70. By approving or causing to be approved and performing or causing to be performed unreasonable and medically unnecessary procedures and treatment and therapies, Respondents risked or caused harm to patients.

71. By approving or causing to be approved and performing or causing to be performed unreasonable and medically unnecessary procedures and treatment and therapies Respondents pursued a fraudulent course of conduct, using methods of avoiding detection, to obtain improper and unlawful government reimbursement, which is not paid back or refunded.

12

72. As a result of their fraudulent course of conduct, Respondents caused damages to the United States government.

73. Upon information and belief, Respondents continue to engage in the same course of fraudulent conduct described above, therefore causing continued harm to patients and damages to the United States government.

## COUNT ONE – FALSE CLAIMS ACT (31 USC 3729(a)(1)(A))

74. Relator realleges and incorporates by reference the allegations contained in the preceding numbered paragraphs of the Complaint, the same as if repeated verbatim.

75. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729, et seq., as amended.

76. By virtue of the acts described above, Respondents knowingly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval.

77. Respondents made claims to the United States Government that they knew were false fraudulent, and sought payment for those claims from the federal treasury.

78. Additionally, Respondents made express and implied certifications that they knew were false in order to obtain payment for its claims from the United States.

79. Respondents had actual knowledge of the falsity or fraudulent claims, or were deliberately ignorant of the truth or falsity of the information, or recklessly disregarded the truth or falsity of the information.

80. Respondents' conduct has caused damage to the United States.

## COUNT TWO – FALSE CLAIMS ACT (31 USC 3729(a)(1)(B))

81. Relator realleges and incorporates by reference the allegations contained in the preceding numbered paragraphs of the Complaint, the same as if repeated verbatim.

13

82. Respondents created, used or caused to be used, records or statements to the United States government that they knew were false or fraudulent in order to get a false or fraudulent claim paid and/or approved by the Government.

83. Respondents' conduct has caused damage to the United States.

<b>COUNT THREE – FALSE CLAIMS ACT (31 USC 3729(a)(1)(C))</b>

84. Relator realleges and incorporates by reference the allegations contained in the preceding numbered paragraphs of the Complaint, the same as if repeated verbatim

85. Respondents combined, conspired, and agreed together to defraud the United States by knowingly submitting false claims to the United States and to its grantee and withholding required information for the purpose of getting the false or fraudulent claims paid or allowed, and committed the other overt acts set forth above in furtherance of that conspiracy, all in violation of 31 U.S.C. § 3729(a)(l)(C), causing damage to the United States.

**V.**   **JURY TRIAL DEMAND**

Relator demands trial by jury on all issues so triable.

**VI.**   **PRAYER FOR RELIEF**

**WHEREFORE,** that as a direct and proximate result of the false claims, acts and omissions as stated herein, the Relator and the United States of America have been financially damaged and defrauded as a result of Respondents in violation of the False Claims Act. Relator demands judgment against Respondents on all claims, request a jury trial on all issues so triable, and the payment of all monetary damages and benefits available and recoverable to Relator and his counsel under applicable law, and the imposition of fines, penalties and restitution as necessary. Relators further request:

1.  Attorney's fees;

2.  Costs associated with the disbursement of this action;

14

3. Interest;

4. A hearing prior to settlement or dismissal;

5. A proportionate share of any alternate remedy obtained pursuant to USC Section 3730 (c)(5);

6. Trial by jury on all issues so triable; and

7. All other relief this court deems fitting and proper.


Respectfully submitted,

/s/Glenn Feagan_____
Glenn Feagan (Bar No. 041520)
Deters Law
5247 Madison Pike
Independence, KY 41051
Phone. (859) 363-1900
gfeagan@feaganlaw.com


Counsel for Relators

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served upon the following by depositing the same into the United States mail, at the addresses indicated below on the 3rd day of June 2022:

The Honorable Merrick Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

The Honorable Kenneth Parker
United States Attorney
Southern District of Ohio
303 Marconi Boulevard, Suite 200
Columbus, OH 43215

I caused such sealed envelopes to be placed in the United States mail, postage fully prepaid, in accordance with the standard business practices of this office, in the city of Independence, Kentucky. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 3, 2022.

*/s/Glenn Feagan*
Glenn Feagan (Bar No. 041520)